**In re Sam E. FORD and Marcia Ford, Debtors.**

**FIRST CITY NATIONAL BANK OF BEAUMONT, Appellant,**

v.

**John J. DURKAY, Trustee for the Sam E. and Marcia Ford Bankruptcy Estate, Appellee.**

**No. 1:90 CV 51.**

United States District Court, E.D. Texas, Beaumont Division.

April 10, 1991.

Bruce M. Partain, Wells, Peyton, Beard, Greenberg, Hunt & Crawford, Beaumont, Tex., for appellant.

John Durkay, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., for appellee.

## MEMORANDUM OPINION AND ORDER

SCHELL, District Judge.

CAME ON TO BE HEARD this day the appeal of First City National Bank of Beaumont (the bank) in the above-captioned and numbered cause, and the court, after considering said motion, the reply and the various arguments of counsel at the hearing, is of the opinion that the appeal is meritorious. The court, therefore, vacates the order of allowance of claims and remands the case to the bankruptcy court for reconsideration in light of this order.

In this bankruptcy appeal, the bank, a creditor of the Fords, is appealing the order of the allowance of claims (the order) signed by the bankruptcy judge on December 4, 1989. The bank holds two notes against Mr. Ford, a real estate lien note in the original amount of $1,200,000 and a promissory note in the original amount of $308,903.67. The bank filed a claim for a total amount of $1,555,489.48, which includes unpaid interest. The bankruptcy court allowed the claim, but considered it a "contingent" claim. Therefore, the court estimated the claim for bankruptcy purposes under section 502(c)(1) of the Bankruptcy Code. The bank's appeal raises three questions: 1) Whether the claim was a contingent claim subject to being estimated pursuant to section 502(c) of the Bankruptcy Code? 2) If it was a contingent claim, was it estimated properly? and 3) Whether the order entered by the bankruptcy court correctly reflected the ruling of the court on the record? The trustee asserts that the claim was contingent and was properly estimated. Because this court's answer to the first question posed is that this claim was not a contingent claim, the remaining two questions do not need to be resolved. The standard of review applicable to questions of fact on appeal is the "clearly erroneous" standard, while questions of law are reviewed de novo. The question addressed in this opinion is a question of law. Bankruptcy Rule 8013; *In re Fabricators, Inc.*, 926 F.2d 1458 (5th Cir.1991).

This appears to be a case of first impression as to the definition of "contingent" under section 502(c)(1) of the Bankruptcy Code. The Bankruptcy Code itself does not provide a definition of a contingent claim. However, the term "contingent" has been judicially defined for sections of the Bankruptcy Code other than 502(c) and in bankruptcy cases prior to the enactment of the Code. The basic definition used by the cases is that contingent claims are claims which depend either as to their existence or their amount on some future event which may not occur at all or may not occur until some uncertain time. More specifically, "claims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred." *In re All Media Properties, Inc.*, 5 B.R. 126, 132–133 (Bankr.S.D.Tex. 1980), *aff'd per curiam*, 646 F.2d 193 (5th

Cir.1981); *In re Albano,* 55 B.R. 363, 366 (N.D.Ill.1985); *In re Norman,* 32 B.R. 562, 565 (Bankr.W.D.Mo.1983); *In re Gladding Corp.,* 20 B.R. 566, 567 (Bankr.D.Mass. 1982); *In re Duty Free Shops Corp.,* 6 B.R. 38, 39 (Bankr.S.D.Fla.1980); *see also In re Trimble Co.,* 339 F.2d 838, 844 (3rd Cir.1964) ("[F]act that payment of the note may be conditional does not mean that the liability for the payment is contingent. No additional act or event ... need have occurred here before liability on the notes attached."); *Collier on Bankruptcy,* paragraph 303.08 at 303–33 (15th Ed.1990) ("When the duty to pay a claim does not rest upon the occurrence of a future event, the claim is not contingent.... A note which is in default ... [is an] example of [a] claim[ ] not contingent as to liability.").

The bank states that because the debtor is a maker on each note, he is liable for the entire amount of each note, and the bank's ability to collect from the other makers or the partnership does not impact the debtor's liability. Thus, the amount and existence of the claim is not in question, and the note is not contingent.

On the other hand, the trustee argues that there are two types of contingencies, one as to the existence of the claim, and the second as to the amount of the claim. He states that because some of the co-makers may pay on the note, it is contingent as to the amount due, and that whether the debtor is primarily liable is irrelevant to a determination as to the contingent nature of the claim. He also says that all multiparty notes are contingent. Another argument the trustee advances is that the other makers on these notes are guarantors. A claim against a guarantor is a classic example of a contingent claim. However, the debtor is not being sued here as a guarantor and the notes at issue here are not guaranteed by the co-makers. There is no indication on the notes that the co-makers are guarantors of the notes, as required under Texas law. Tex.Bus. & Comm.Code Ann. § 3.118(5); *Retamco, Inc. v. Dixilyn–Field Drilling Co.,* 693 S.W.2d 520 (Tex. Civ.App.—Houston [14th Dist.] 1985, no writ).

■ The trustee also disagrees with the contention that state law determines the substantive rights of the parties. However, state law is the appropriate law for determining the substantive rights of the parties and the validity of a claim. *Vanston v. Green,* 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946); *In re Chicago, Milwaukee, St. Paul and Pac. R.R.,* 791 F.2d 524 (7th Cir.1986); *In re Christensen,* 95 B.R. 886, 890 (Bankr.D.N.J. 1988); *In re Continental Airlines Corp.,* 64 B.R. 865, 871 (Bankr.S.D.Tex.1986); *In re Skelly,* 38 B.R. 1000, 1001 (D.C.1984). The Supreme Court has said that "property interests are created and defined by state law.... [T]here is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *see also, Prudence Realization Corp. v. Geist,* 316 U.S. 89, 95, 62 S.Ct. 978, 982, 86 L.Ed. 1293 (1942). Of course, while bankruptcy does not take away a creditor's rights and remedies under state law, bankruptcy does alter the creditor's power to enforce the claim against the bankrupt. *Lindermuth v. Myers,* 84 B.R. 164, 167 (N.D.S.D.1988); *see also In re Brints Cotton Marketing, Inc.,* 737 F.2d 1338, 1341 (5th Cir.1984). State law may determine the validity of a claim, but whether it is allowed is a matter of federal law and the bankruptcy court's exercise of equitable powers. *In re Shelter Enterprises,* 98 B.R. 224, 229, *amended opinion,* 99 B.R. 668 (nonsubstantive changes) (Bankr.W.D.Pa.1989). Therefore, this court must examine state law to determine whether the debtor is primarily liable on the debt, both individually and as a partner.

■ Ford, along with all his partners, signed the real estate lien note both individually and as a partner in the Jefferson Group. Under Texas law, a co-maker is jointly and severally liable for the entire amount of the note. Tex.Bus. & Comm. Code Ann. § 3.118(5) (Vernon 1967). Additionally, every partner is jointly and severally liable for all partnership debts. Tex.

Rev.Civ.Stat.Ann. art. 6132b § 15 (Vernon 1970). Finally, the real estate lien note itself provides that each maker is liable for the entire amount of the note, while the promissory note states on its face that each maker is jointly and severally liable. As a result, the debtor is primarily liable to the bank for payment of these notes. The parties who signed these notes are co-makers with the debtor. None of these parties are guarantors. All the makers of the notes are jointly and severally liable on these notes. The trustee might have to file contribution or indemnification actions if the debtor pays more than his proportionate share of each note, but uncertainty as to who among the makers pays what portion of the notes does not render this claim contingent. The bank is entitled to collect the entire amount from any one of the makers. No aspect of these notes is contingent on the happening of some uncertain future event to determine liability or the amount due. *See also, In re Kelsey*, 6 B.R. 114 (Bank.S.D.Tex.1980) (debtor's liability was not contingent merely because he was a general partner in a limited partnership.)

Notwithstanding the fact that state law controls the validity of this claim, the definition of a "contingent" claim for bankruptcy purposes is a bankruptcy law question. Although a contingent claim has been discussed and defined in cases dealing with other sections of the code (see cases cited above), the question presented in this case is whether that definition should also apply to section 502(c)(1) of the code, the section at issue here.

One case has posed the same question, but did not resolve it. Instead, the court in that case asked for further briefing of the issues and no follow up opinion was ever issued. *In re Andrews*, 78 B.R. 420, 424–425 (Bankr.E.D.Pa.1987). In *Andrews*, the court's key consideration was whether the policies that underlie the definition of a contingent claim for purposes of § 109(e) and § 303(b)(1) should also apply to § 502(c)(1). The court noted that the narrow interpretation of term "contingent" used in those cases may be due to a policy of restricting the use of those code sections. On the other hand, the court also theorized that the paucity of cases interpreting § 502 may be due to an unwillingness to classify claims as "contingent."

Only one case has adopted the position taken by the trustee in this case. *In re Elsub Corp.*, 66 B.R. 172 (Bankr.N.J.1987). The *Elsub* case, in the context of section 303(b) of the code, draws a distinction between contingency as to liability and contingency as to payment. No other case cites the *Elsub* reasoning, and because it does not comport with the traditional definition of what a contingent claim is, this court respectfully declines to follow *Elsub*.

The lack of a definition of "contingent" under the Code may signify Congressional satisfaction with the judicial construction of the term under other Bankruptcy Code sections. Further, the definition of a term in the Code should be consistent throughout the Code, absent any indication in the Code or caselaw that different definitions should be used. For all of the foregoing reasons, this court finds that the bank's claim was not "contingent" and should not have been estimated under section 502(c)(1) of the Bankruptcy Code. In addition, from a purely equitable standpoint, it would appear to be unfair to deprive the bank creditor of the joint and several liability protection originally negotiated for on the part of this debtor by estimating the claim at something less than its full amount. It is, therefore,

ORDERED that the order of allowance of claims entered December 4, 1989, is hereby VACATED and this matter is REMANDED to the bankruptcy court.